**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Shireen M. Clarkson (SBN 237882)
*sclarkson@clarksonlawfirm.com*
Matthew T. Theriault (SBN 244037)
*mtheriault@clarksonlawfirm.com*
Lauren E. Anderson (SBN 329173)
*landerson@clarksonlawfirm.com*
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

**MOON LAW APC**
Christopher D. Moon (SBN 246622)
*chris@moonlawapc.com*
Kevin O. Moon (SBN 246792)
*kevin@moonlawapc.com*
228 Hamilton Ave., 3rd Fl
Palo Alto, California 94301
Tel: (619) 915-9432
Fax: (650) 618-0478

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

MICHELLE MORAN,
individually and on behalf of all others
similarly situated,

        Plaintiff,

    v.

S.C. JOHNSON & SON, INC. a
Wisconsin corporation,

        Defendant.

Case No.: 4:20-CV-03184-HSG

**FIRST AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

     Plaintiff Michelle Moran ("Plaintiff"), individually and on behalf of all others similarly situated, as more fully described herein (the "Class" and "Class Members"), brings this class action against Defendant S.C. Johnson & Son, Inc. ("Defendant"), and alleges as follows:

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

## NATURE OF THE ACTION

1.     Windex's "Non-Toxic" formula is toxic to humans, animals, and the environment.



FIRST AMENDED CLASS ACTION COMPLAINT

2. Defendant exposes consumers to harmful ingredients hidden in its Windex products by fraudulently advertising them as non-toxic. The products are, in fact, toxic because they contain ingredients that have been linked to organ system toxicity, endocrine disruption, immunotoxicity, lung irritation, loss of sight, and shock. In fact, Defendant even admits many of the ingredients in the products are known human skin allergens. Through its unlawful conduct, Defendant obtains an unfair competitive advantage in the household cleaning market and unfairly profits from consumers' desire for products that are not harmful to humans, animals, and the environment.

3. The purported "Non-Toxic" products at issue are Windex Original Non-Toxic Formula (pictured above), Windex Vinegar Non-Toxic Formula, Windex Ammonia-Free Non-Toxic Formula, and Windex Multi-Surface Non-Toxic Formula (collectively, the "Products").

4. Defendant manufactures, markets, advertises, labels, and sells the Products throughout California and the United States.

5. Contrary to their labeling, the purportedly non-toxic cleaning Products contain ingredients that are harmful to humans, animals, and/or the environment.

6. Through falsely, misleadingly, and deceptively labeling the Products, Defendant sought to take advantage of consumers' desire for non-toxic cleaning products that are safe for humans, animals, and the environment, while reaping the financial benefits of using less desirable and harmful ingredients in the Products. Defendant has done so at the expense of unwitting consumers, as well as Defendant's lawfully acting competitors, over whom Defendant maintains an unfair competitive advantage. Defendant has reaped many millions of dollars through this fraudulent scheme based on a calculated business decision to put profits over people.

7. As a result, Plaintiff brings this action individually and on behalf of those similarly situated and seeks to represent a National Class and a California Subclass (defined *infra*). Plaintiff seeks injunctive relief to stop Defendant's unlawful

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

labeling and marketing of the Products. In addition, Plaintiff seeks damages, interest thereon, reasonable attorneys' fees and costs, restitution, other equitable relief, and disgorgement of all benefits Defendant has enjoyed from its conduct. Plaintiff makes these allegations based on her personal knowledge and, otherwise, on information and belief based on investigation of her counsel.

8.   Plaintiff's primary litigation objective is to enjoin Defendant's unlawful labeling practices and to obtain restitution for the National Class and California Subclass.

## JURISDICTION

9.   This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## VENUE

10.   Venue is proper in this District under 28 U.S.C. Section 1391 because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. In addition, Plaintiff purchased the unlawful Products in this District, and Defendant has marketed, advertised, and sold the Products within this District.

## PARTIES

11.   Plaintiff Michelle Moran, who is currently a resident of Pleasanton, California, purchased the Windex Original Non-Toxic Formula at a grocery store in Pleasanton, California for approximately $4 in 2019. The labeling of the Product purchased by Plaintiff is typical of the labeling of the Products purchased by members of the Class.  In making her purchase, Plaintiff relied upon the Product's advertising and labeling claims. The claims were prepared and approved by Defendant and its agents and disseminated statewide and nationwide, as well as designed to encourage consumers to purchase the Products. If Plaintiff had known that the Product contained

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

FIRST AMENDED CLASS ACTION COMPLAINT

ingredients that are harmful to humans, animals, and the environment, she would not have purchased the Product.

12.     However, if the Products were actually non-toxic as labeled and advertised, Plaintiff would purchase the Products in the future. Since Plaintiff would like to purchase the Products again and obtain the advertised benefits, she might purchase them again in the future—despite the fact that they were once marred by false advertising or labeling—as she may reasonably, but incorrectly, assume the Products were improved. In that regard, Plaintiff is an average consumer who is not sophisticated in the chemistry or formulations of household cleaning products, so she is at risk of reasonably, but incorrectly, assuming that Defendant fixed the formulation of the Products such that she might buy them again believing they were no longer falsely advertised and labeled.

13.     Defendant S.C. Johnson & Son, Inc. is a Wisconsin corporation with its principal place of business in Racine, Wisconsin, and was doing business in the state of California during all relevant times. Directly and through its agents, S.C. Johnson & Son, Inc. has substantial contacts with and receives substantial benefits and income from and through the state of California. S.C. Johnson & Son, Inc. is one of the owners, manufacturers, or distributors of the Products, and is one of the companies that created and/or authorized the false, misleading, and deceptive labeling for the Products.

14.     Defendant and its agents promoted, marketed and sold the Products at issue in this jurisdiction and in this judicial district.  The unfair, unlawful, deceptive, and misleading advertising and labeling of the Products were prepared and/or approved by Defendant and its agents and were disseminated by Defendant and its agents through labeling and advertising containing the misrepresentations alleged herein.

## **FACTUAL ALLEGATIONS**

15.     In recent years, consumers have become increasingly concerned about

FIRST AMENDED CLASS ACTION COMPLAINT

using household cleaning products that are safe for exposure to humans, animals, and the environment.

16.     In response to consumers' desire for safe and non-toxic cleaning products, many companies "greenwash" their products by deceptively claiming that their cleaning products are safe when, in fact, they contain ingredients that are harmful to humans, animals, and/or the environment.

17.     As a result of this consumer fraud, the United States Federal Trade Commission ("FTC") created the "Green Guides" to help companies avoid making misleading and deceptive claims.[1] The Green Guides specifically address the use of the term "non-toxic" in the marketing of a product, stating, "A non-toxic claim likely conveys that a product, package, or service is non-toxic both for humans and for the environment generally."[2] Accordingly, "[i]t is deceptive to misrepresent, directly or by implication, that a product, package or service is non-toxic. Non-toxic claims should be clearly and prominently qualified to the extent necessary to avoid deception."[3]

18.     The Green Guides also provide examples of marketing claims in order to "provide the Commission's views on how reasonable consumers likely interpret certain claims."[4] The FTC provided the following relevant example:[5]

> A marketer advertises a cleaning product as "essentially non-toxic" and "practically non-toxic." The advertisement likely conveys that the product does not pose any risk to humans or the environment, including household pets. If the cleaning product poses no risks to humans but is toxic to the environment, the claims would be deceptive.

19.     This example demonstrates that even when "non-toxic" claims are qualified by such terms as "essentially" or "practically," they are nonetheless

[1] *See generally* 16 C.F.R. § 260 – Guides for the Use of Environmental Marketing Claims.
[2] 16 C.F.R. § 260.10(b).
[3] 16 C.F.R. § 260.10(a).
[4] 16 C.F.R. § 260.1(d)
[5] 16 C.F.R § 260.10.

FIRST AMENDED CLASS ACTION COMPLAINT

1    construed by reasonable consumers as "not pos[ing] any risk to humans or the
2    environment, including household pets." Thus, broad and unqualified non-toxic
3    claims, such as the ones present on the Products, would even more strongly convey
4    such a meaning.

5        20.   Due to concerns about toxicity in product ingredients, consumers have
6    increasingly sought out safe and non-toxic household cleaning products, the sales of
7    which have surged in recent years.

8        21.   As described *supra*, Defendant manufactures, markets, advertises, labels,
9    and sells Windex Original Non-Toxic Formula, Windex Vinegar Non-Toxic Formula,
10   Windex Ammonia-Free Non-Toxic Formula, and Windex Multi-Surface Non-Toxic
11   Formula.

12       22.   Images of the Products appear on the following pages:

13   ///

15   ///

17   ///

19   ///

21   ///

23   ///

25   ///

27   ///

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

**Windex Original Non-Toxic Formula**



**Windex Vinegar Non-Toxic Formula**



FIRST AMENDED CLASS ACTION COMPLAINT

**Windex Ammonia-Free Non-Toxic Formula**



FIRST AMENDED CLASS ACTION COMPLAINT

## Windex Multi-Surface Non-Toxic Formula



FIRST AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

23.   Defendant prominently and uniformly labels the front display panel of the Non-Toxic Products with the claim "NON-TOXIC FORMULA." The labels are set against—and highlighted by—an eye-catching, polished-silver background or font color.

24.   Based on the "Non-Toxic" representations, reasonable consumers believe the Products contain only non-toxic ingredients that are safe for humans, animals, and the environment. Put differently, reasonable consumers do not believe the Products contain any harmful ingredients or allergens.

25.   However, in spite of the labeling, the Products actually contain, in varying combinations, ingredients that are harmful to humans, animals, and/or the environment, including but not limited to butylphenyl methylpropional, citronellol, linalool, sodium hydroxide, ammonium hydroxide, sodium dodecylbenzene sulfonate, butoxypropanol, 2-hexoxyethanol, and isopropanolamine.

26.   **Butylphenyl methylpropional**, or "lilial" has been linked to bioaccumulation, organ system toxicity, endocrine disruption, and allergies.[6]

27.   **Citronellol** has been found to be immunotoxic.[7]

28.   **Linalool** is a fragrance allergen that may cause contact dermatitis.[8]

---

[6] *See* "Lilial" ENVIRONMENTAL WORKING GROUP, https://www.ewg.org/skindeep/ingredients/700872-LILIAL/ (last visited July 28, 2020) (noting moderate to high toxicity concern in humans); *see also* Charles et al., "Oestrogenic activity of benzyl salicylate, benzyl benzoate and butylphenylmethylpropional (Lilial) in MCF7 human breast cancer cells in vitro," J. APPL. TOXICOL. Vol. 29, Issue 5, 422-34, https://onlinelibrary.wiley.com/doi/abs/10.1002/jat.1429 (last visited July 28, 2020).
[7] *See* "Citronellol" ENVIRONMENTAL WORKING GROUP, https://www.ewg.org/skindeep/ingredients/701389-CITRONELLOL/ (last visited July 28, 2020) (noting high risk of allergies and immunotoxicity).
[8] *See* "Linalool" ENVIRONMENTAL WORKING GROUP, https://www.ewg.org/skindeep/ingredients/ 703568-LINALOOL/ (last visited July 28, 2020) (strong evidence human system toxicant or allergen); *see also* de Groot, "Linalool Hydroperoxides" DERMATITIS, Vol. 30, Issue 4, p. 243-46, https://www.ncbi.nlm.nih.gov/pubmed/31313746 (last visited July 28, 2020)

29.   **Sodium hydroxide** is a chemical on the Special Health Hazard Substance List that is highly corrosive.[9] Contact with the skin and eyes causes severe irritation and lasting damage.[10] In addition, inhalation of sodium hydroxide can cause irritation of the lungs and even pulmonary edema.[11] Furthermore, when sodium hydroxide makes contact with water or moisture, it can generate enough heat to ignite combustibles.[12]

30.   **Ammonium hydroxide** is a chemical on the Special Health Hazard Substance List and is cited by the Environmental Protection Association.[13] It is highly corrosive and causes irritation to the skin, eyes, and lungs.[14]

31.   **Sodium dodecylbenzene sulfonate** is a chemical on the Special Health Hazard Substance List that causes skin and eye irritation and shortness of breath.[15]

32.   **Butoxypropanol** is readily absorbed via inhalation and skin exposure, causing eye and skin irritation and adverse effects on the central nervous system, kidneys, and liver.[16]

---

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

(finding high frequencies of positive reactions to oxidized linalool, concluding linalool is an "important" fragrance allergen when exposed to air).
[9] *Sodium Hydroxide*, NEW JERSEY DEPARTMENT OF HEALTH, https://nj.gov/health/eoh/rtkweb/documents/fs/1706.pdf (last visited July 28, 2020).
[10] *See id.*
[11] *Id.*
[12] *Id.*
[13] *Ammonium Hydroxide*, NEW JERSEY DEPARTMENT OF HEALTH, https://www.nj.gov/health/eoh/rtkweb/documents/fs/0103.pdf (last visited July 28, 2020).
[14] *Id.*
[15] *Sodium dodecylbenzene sulfonate*, NEW JERSEY DEPARTMENT OF HEALTH, https://nj.gov/health/eoh/rtkweb/documents/fs/1698.pdf (last visited July 28, 2020).
[16] J. Wess & H. Ahlers, *2-Butoxyethanol*, CONCISE INTERNATIONAL CHEMICAL ASSESSMENT 10, WORLD HEALTH ORGANIZATION (1998), https://www.who.int/ipcs/publications/cicad/cicad_10_revised.pdf (last visited July 28, 2020).

33.   **2- hexoxyethanol** has a high concern for skin allergies and irritation.[17] In addition, it causes developmental and reproductive toxicity.[18]

34.   **Isopropanolamine** is a combustible, corrosive chemical that causes skin and eye irritation as well as loss of vision.[19] Upon ingestion, it causes a burning sensation, abdominal pains, and shock or collapse.[20] Upon inhalation, it causes sore throat and shortness of breath.[21]

35.   In addition, Defendant itself acknowledges that many other ingredients in the Products are skin allergens, including the following:[22]

**Windex Original Non-Toxic Formula:**
- Butylphenyl methylpropional
- Citronellol
- Citrus aurantium dulcis peel oil
- Hexyl cinnamal
- Linalool
- Terpineol

**Windex Vinegar Non-Toxic Formula:**
- Linalool
- Linalyl Acetate

**Windex Ammonia-Free Non-Toxic Formula:**
- 4-tert-butylcyclohexyl acetate
- Butylphenyl methylpropional
- c11-15 sec-pareth-12
- Hexamethylindanopyran
- Hexyl cinnamal

---

[17] Hexoxyethanol, Environmental Working Group, https://www.ewg.org/guides/substances/20962-HEXOXYETHANOL/ (last visited July 28, 2020).

[18] *See id.*

[19] *Isopropanolamine*, InChem, http://www.inchem.org/documents/icsc/icsc/eics0905.htm (last visited July 28, 2020).

[20] *Id.*

[21] *Id.*

[22] *See, e.g.,* https://www.whatsinsidescjohnson.com/us/en/brands/windex/windex-original-glass-cleaner (last visited July 28, 2020).

FIRST AMENDED CLASS ACTION COMPLAINT

- Tetramethyl acetyloctahydronaphthalenes

**Windex Multi-Surface Non-Toxic Formula:**
- Linalool
- Linalyl Acetate

36.   Labeling the Products as "Non-Toxic" when they contain **any** ingredients that can be harmful to humans, animals, and/or the environment is wholly misleading and deceptive.

37.   In fact, the National Advertising Division ("NAD") found that the representations made on the labeling and in the advertising of the Products are false, misleading, and likely to deceive reasonable consumers. On March 24, 2020, the NAD recommended that Defendant "discontinue the claim 'non-toxic' on the package labeling of its Windex Vinegar Glass Cleaner."[23] In explaining its decision, the NAD stated:[24]

> After considering the guidance offered by the Federal Trade Commission's Guides for the Use of Environmental Marketing Claims ("Green Guides") and FTC precedent, NAD determined that the term "non-toxic," as used on the label of Windex Vinegar Glass Cleaner, reasonably conveys a message that the product will not harm people (including small children), common pets, or the environment. Importantly, NAD noted that a reasonable consumer's understanding of the concept of "will not harm" is not limited to death, but also various types of temporary physical illness, such as vomiting, rash, and gastrointestinal upset.

38.   Defendant provided the NAD with certain substantiation for the non-toxic claim. However, the NAD determined that "the evidence fell short of providing the conclusive assessment of toxicity necessary to support a 'non-toxic' claim. Thus, the NAD recommended that Defendant discontinue the claim "non-toxic."[25]

39.   By misleadingly and deceptively labeling the Products, as described herein, Defendant sought to take advantage of consumers' desire for true non-toxic, safe cleaning products. Defendant has done so at the expense of unwitting

---

[23] *See* http://asrcreviews.org/nad-recommends-s-c-johnson-discontinue-non-toxic-claim-on-windex-vinegar-glass-cleaner-advertiser-to-appeal-to-narb/ (last visited July 28, 2020).
[24] *Id.*
[25] *Id.*

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

consumers—many of whom seek to protect their household members and pets—and Defendant's lawfully acting competitors, over whom Defendant has an unfair competitive advantage.

40.   By using cheaper and harmful ingredients in lieu of natural, safe ingredients, on information and belief, Defendant reduced its manufacturing costs and increased its profits.

41.   The Non-Toxic representations were and are material to reasonable consumers, including Plaintiff, in making purchasing decisions.

42.   Plaintiff relied on Defendant's misrepresentations, described herein, in making the decision to purchase the Product.

43.   At the time Plaintiff purchased the Product, Plaintiff did not know, and had no reason to know, that the Product's labeling and advertising were false, misleading, deceptive, and unlawful as set forth herein.

44.   Defendant materially misled and failed to adequately inform reasonable consumers, including Plaintiff, that the Products contained harmful or "toxic" ingredients.

45.   Plaintiff would not have purchased the Product if she had known the truth. Accordingly, based on Defendant's material misrepresentations and omissions, reasonable consumers, including Plaintiff, purchased the Products to their detriment.

46.   It is possible, however, that Plaintiff would purchase the Products in the future if they were properly labeled, and/or the ingredients complied with the labeling and advertising statements. Specifically, Plaintiff would like to purchase the Products again if the Products only contained non-toxic ingredients, and no longer contained harmful ingredients and allergens.

**The Products Are Substantially Similar**

47.   Plaintiff Michelle Moran purchased Windex Original Non-Toxic Formula. The additional Products, Windex Vinegar Non-Toxic Formula, Windex Ammonia-Free Non-Toxic Formula, and Windex Multi-Surface Non-Toxic Formula,

are substantially similar to the Product purchased by Plaintiff. All four Products are cleaning products sold by Defendant. All four Products are sold under the Windex brand. All four Products are sold to consumers as "Non-Toxic" products. All four Products are labeled with the same "Non-Toxic" claim, which is presented in the same metallic silver banner and placed in the same location on the Product packaging. All four Products are sold in clear plastic "spray bottles" of identical shape and size.

48. <u>All Products</u> contain, in varying combinations, ingredients that are harmful to humans, animals, and/or the environment, including 2-hexoxyethanol, sodium dodecylbenzene sulfonate, and fragrance.

## **CLASS ACTION ALLEGATIONS**

49. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and all others similarly situated, and as members of the Classes defined as follows:

> All residents of the United States who, within the applicable statute of limitations periods, purchased the Products ("Nationwide Class"); and

> All residents of California who, within four years prior to the filing of this Complaint, purchased the Products ("California Subclass").

("Nationwide Class" and "California Subclass," collectively, the "Class").

50. Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

51. Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

52.   This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

53.   **Numerosity:** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

54.   **Common Questions Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues.  Included within the common questions of law or fact are:

    a.   Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

    b.   Whether Defendant's conduct of advertising and labeling the Products as "Non-Toxic" when they contained ingredients that are harmful to humans, animals, and the environment constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq*.;

    c.   Whether Defendant used deceptive representations in connection with the sale of the Products in violation of Civil Code section 1750, *et seq*.;

    d.   Whether Defendant represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq*.;

    e.   Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq*.;

    f.   Whether Defendant's labeling and advertising of the Products are untrue or misleading in violation of Business and Professions Code section 17500, *et seq*.;

g. Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, *et seq*.;

h. Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

i. Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

j. Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

k. Whether Plaintiff and the Class paid more money for the Products than they actually received;

l. How much more money Plaintiff and the Class paid for the Products than they actually received;

m. Whether Defendant's conduct constitutes breach of express warranty;

n. Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief; and

o. Whether Defendant was unjustly enriched by its unlawful conduct.

p. Whether Plaintiff and the Class have sustained damages as a result of Defendant's unlawful conduct; and

q. The proper measure of damages sustained by Plaintiff and Class Members.

55. **Typicality**: Plaintiff's claims are typical of the claims of the Class Members she seeks to represent because Plaintiff, like the Class Members, purchased Defendant's misleading and deceptive Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class Members' claims

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

FIRST AMENDED CLASS ACTION COMPLAINT

arise from the same practices and course of conduct and are based on the same legal theories.

56. **Adequacy**: Plaintiff is an adequate representative of the Class she seeks to represent because her interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

57. **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a. The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b. Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

c. Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d. When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

58.   Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

59.   The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

60.   Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT ONE
### Unfair and Unlawful Business Acts and Practices
### (Business and Professions Code § 17200, *et seq.*)
### (*On Behalf of the California Subclass*)

61.   Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

62.   This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq.*, on behalf of Plaintiff and a Class consisting of all persons residing in the State of California who purchased the Products for personal use and not for resale during the time period of four years prior to the filing of the complaint through the present.

63.   Defendant, in its advertising and packaging of the Products, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Products, specifically, labeling the Products "Non-Toxic" when they contain ingredients that are harmful to humans, animals, and the environment. Such claims and omissions appear on the label and packaging of the Products, which

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

are sold at Defendant's stores nationwide, point-of-purchase displays, as well as Defendant's official website, and other retailers' advertisements which have adopted Defendant's advertisements.

64.   Defendant's labeling and advertising of the Products led and continues to lead reasonable consumers, including Plaintiff, to believe that the Products are non-toxic.

65.   Defendant does not have any reasonable basis for the claims about the Products made in Defendant's advertising and on Defendant's packaging or labeling because the Products contain ingredients that are harmful to humans, animals, and the environment. Defendant knew and knows that the Products are not "non-toxic," though Defendant intentionally advertised and marketed the Products to deceive reasonable consumers into believing that Products were "non-toxic."

66.   The misrepresentations by Defendant alleged above constitute unfair, unlawful, and fraudulent business practices within the meaning of California Business and Professions Code Section 17200.

67.   In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

68.   Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

69.   All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or it is otherwise ordered to do so.

70.     Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff and the members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling and advertising the sale and use of the Products. Likewise, Plaintiff and the members of the Class seek an order requiring Defendant to disclose such misrepresentations, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentations. Plaintiff has no adequate remedy at law. Without equitable relief, Defendant's unlawful, fraudulent, and unfair practices will continue to harm Plaintiff and the Class. Plaintiff also seeks restitution of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices described herein.

71.     Plaintiff and the Class have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's false representations.

72.     Plaintiff and the Class would not have purchased the Products but for the representations by Defendant about the Products as being "non-toxic."

73.     The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200.

### A. "Unfair" Prong

74.     Under California's Unfair Competition Law, Cal. Bus. & Prof. Code Section 17200, *et seq.*, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

75.     Defendant's action of labeling the Products as "non-toxic" when they contain ingredients that are harmful to humans, animals, and the environment does not confer any benefit to consumers.

76.     Defendant's action of labeling the Products as "non-toxic" when they

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

FIRST AMENDED CLASS ACTION COMPLAINT

contain ingredients that are harmful to humans, animals, and the environment causes injuries to consumers, who do not receive products commensurate with their reasonable expectations.

77.     Defendant's action of labeling the Products as "non-toxic" when they contain ingredients that are harmful to humans, animals, and the environment causes injuries to consumers, who end up overpaying for the Products and receiving Products of lesser standards than what they reasonably expected to receive.

78.     Consumers cannot avoid any of the injuries caused by Defendant's deceptive labeling and advertising of the Products.

79.     Accordingly, the injuries caused by Defendant's deceptive labeling and advertising outweigh any benefits.

80.     Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

81.     Here, Defendant's conduct of labeling the Products as "non-toxic" when they contain ingredients that are harmful to humans, animals, and the environment has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

82.     Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

83.     Defendant's labeling and advertising of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

84.     Defendant knew or should have known of its unfair conduct.

85.     As alleged in the preceding paragraphs, the misrepresentations by

Defendant detailed above constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

86.   There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products as "non-toxic."

87.   All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

88.   Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of mislabeling the Products as set forth herein. Plaintiff has no adequate remedy at law. Without equitable relief, Defendant's unlawful, fraudulent, and unfair practices will continue to harm Plaintiff and the Class. Plaintiff also seeks restitution of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices described herein.

89.   Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff and the Class paid an unwarranted premium for the Products. Specifically, Plaintiff and the Class paid for Products that contained ingredients harmful to humans, animals, and the environment. Plaintiff and the Class would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive.

### B.   "Fraudulent" Prong

90.   California Business and Professions Code Section 17200, *et seq.,* considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

91.   Defendant's conduct of labeling the Products as "non-toxic" when they

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

contain ingredients that are harmful to humans, animals, and the environment is likely to deceive members of the public.

92.   Defendant's labeling and advertising of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes fraudulent conduct.

93.   Defendant knew or should have known of its fraudulent conduct.

94.   As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

95.   Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products as "non-toxic."

96.   All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

97.   Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of mislabeling the Products as described herein. Plaintiff has no adequate remedy at law. Without equitable relief, Defendant's unlawful, fraudulent, and unfair practices will continue to harm Plaintiff and the Class. Plaintiff also seeks restitution of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices described herein.

98.   Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff and the Class paid an unwarranted premium for the Products. Specifically, Plaintiff and the Class paid for Products that they believed were non-toxic when, in fact, they contained harmful ingredients. Plaintiff and the Class would not have purchased the Products if they had known that they were not non-toxic.

### C.   "Unlawful" Prong

99.   California Business and Professions Code Section 17200, *et seq.,* identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

100. Defendant's advertising of the Products, as alleged in the preceding paragraphs, violates California Civil Code Section 1750, *et seq.* and California Business and Professions Code Section 17500, *et seq.*

101. Defendant's packaging, labeling, and advertising of the Products, as alleged in the preceding paragraphs, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct.

102. Defendant knew or should have known of its unlawful conduct.

103. As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code Section 17200.

104. There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein. Defendant could have refrained from omitting that the Products contained ingredients that are harmful to humans, animals, and the environment.

105.  All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

106. Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive labeling and advertising of the Products. Plaintiff has no adequate remedy at law. Without equitable relief, Defendant's unlawful, fraudulent, and unfair practices will continue to harm Plaintiff and the Class. Plaintiff also seeks restitution of the amounts Defendant acquired

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

through the unfair, unlawful, and fraudulent business practices described herein.

107.  Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff and the Class paid an unwarranted premium for the Products. Plaintiff and the Class would not have purchased the Products if they had known that Defendant purposely deceived consumers into believing that the Products are non-toxic cleaning products, thus creating the false impression that the Products do not contain harmful ingredients.

## **COUNT TWO**

### **Deceptive Advertising Practices**

### **(California Business & Professions Code §§ 17500, *et seq*.)**

### (***On Behalf of the California Subclass***)

108.  Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

109.  Plaintiff brings this claim individually and on behalf of the California Subclass.

110.  California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising[.]"

111.  Defendant violated § 17500 when it represented, through its false and misleading advertising and other express representations, that Defendant's Products possessed characteristics and value that they did not actually have.

112.  Defendant's deceptive practices were specifically designed to induce reasonable consumers like Plaintiff to purchase the Products. Defendant's uniform, material representations and omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its uniform representations and omissions were untrue and misleading. Plaintiff purchased the Products in reliance on the representations made by Defendant, as alleged herein.

113.  Plaintiff and members of the California Subclass have been directly and

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Products that lacked the characteristics advertised, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Subclass members.

114.  The above acts of Defendant, in disseminating materially misleading and deceptive representations and statements throughout California to consumers, including Plaintiff and members of the California Subclass, were and are likely to deceive reasonable consumers in violation of § 17500.

115.  In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of § 17500.

116.  Defendant continues to engage in unlawful, unfair and deceptive practices in violation of §17500.

117.  As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500, Plaintiff and members of the California Subclass, pursuant to § 17535, are entitled to an order of this Court enjoining such future wrongful conduct on the part of Defendant, and requiring Defendant to disclose the true nature of its misrepresentations. Plaintiff has no adequate remedy at law. Without equitable relief, Defendant's unfair, deceptive, untrue, and misleading practices will continue to harm Plaintiff and the Class. Plaintiff and members of the California Subclass are also entitled to compensatory, monetary, restitutionary, and punitive damages in an amount to be determined at trial.

## **COUNT THREE**

### **Consumers Legal Remedies Act**

### **(Cal. Civ. Code § 1750, *et seq.*)**

### (***On Behalf of the California Subclass***)

118.  Plaintiff re-alleges and incorporates by reference the allegations

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

contained in the preceding paragraphs of this complaint, as though fully set forth herein.

119. Plaintiff brings this claim individually and on behalf of the California Subclass.

120. Plaintiff brings this action pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq.

121. The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

122. The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

123. Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

124. Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

125. Purchase of the Products by Plaintiff and members of the California Subclass are "transactions," as defined by the CLRA in California Civil Code §1761(e).

126. Defendant violated Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have" in that the Products are falsely labeled and advertised as being, among other things, non-toxic. Defendant knew that consumers will often pay more for products with this attribute and have unfairly profited from their false and misleading claims.

127. Similarly, Defendant violated section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . if they are of another" by falsely and deceptively labeling and advertising the Products as, among other things, non-toxic.

128. In addition, Defendant violated section 1770(a)(9) by advertising the Products "with intent not to sell them as advertised" in that the Products are falsely labeled and advertised as, among other things, non-toxic.

129. Defendant's uniform and material representations and omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its representations and omissions were untrue and misleading.

130. Plaintiff and members of the California Subclass could not have reasonably avoided such injury. Plaintiff and members of the California Subclass were unaware of the existence of the facts that Defendant suppressed and failed to disclose; and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

131. Plaintiff and members of the California Subclass have been directly and proximately injured by Defendant's conduct. Such injury includes, but is not limited to, the purchase price of the Products and/or the price of the Products at the prices at which they were offered.

132. Given that Defendant's conduct violated § 1770(a), Plaintiff and members of the California Subclass are entitled to seek and seek injunctive relief to put an end to Defendant's violations of the CLRA. Plaintiff has no adequate remedy at law. Without equitable relief, Defendant's unfair and deceptive practices will continue to harm Plaintiff and the Class. Plaintiff also seeks restitution of the amounts Defendant acquired through the unfair and deceptive business practices described herein.

133. Moreover, Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers to increase the sale of the Products.

134. On May 8, 2020, pursuant to California Civil Code § 1782(a), Plaintiff on her own behalf, and on behalf of members of the California Subclass, notified

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Defendant of the alleged violations of the Consumers Legal Remedies Act.

135.  Plaintiff further requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to §1780(a)(2). Plaintiff also seeks compensatory, monetary, restitutionary, and punitive damages in an amount to be determined at trial.

## COUNT FOUR

### Breach of Express Warranty

### (*On Behalf of the Nationwide Class and California Subclass*)

136. Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

137. Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass.

138. By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising constitutes express warranties and became part of the basis of the bargain between Plaintiff and members of the Class and Defendant.

139. Defendant purports, through the Products' labeling and advertising, to create express warranties that the Products are, among other things, non-toxic.

140. Despite Defendant's express warranties about the nature of the Products, the Products are not non-toxic, and the Products are, therefore, not what Defendant represented them to be.

141. Accordingly, Defendant breached express warranties about the Products and their qualities because the Products do not conform to Defendant's affirmations and promises.

142. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and members of the Class were harmed in the amount of the

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

## COUNT FIVE

### Unjust Enrichment

### (*On Behalf of the Nationwide Class and California Subclass*)

143.  Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

144.  Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass.

145.  By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

146.  Defendant had knowledge of such benefit.

147.  Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

148.  Defendant's acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent and misleading representations and omissions. Therefore, restitution and/or disgorgement of such economic enrichment is required.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

    a.  For an order requiring Defendant to immediately cease and desist from selling the unlawful Products in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

b. For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

c. For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiff and the Class for all causes of action;

d. For an order awarding punitive damages;

e. For an order awarding attorneys' fees and costs;

f. For an order awarding pre-and post-judgment interest; and

g. For such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all causes of action.

Dated: July 29, 2020

Respectfully submitted,

**CLARKSON LAW FIRM**
By:

RYAN J. CLARKSON
SHIREEN M. CLARKSON
MATTHEW T. THERIAULT
LAUREN E. ANDERSON

Attorneys for Plaintiff

**MOON LAW APC**
By:

CHRISTOPHER D. MOON
KEVIN O. MOON

Attorneys for Plaintiff

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FIRST AMENDED CLASS ACTION COMPLAINT