UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE: S.C. JOHNSON & SON, INC.<br><br>WINDEX NON-TOXIC LITIGATION<br><br><br>This Document Relates To: All Actions | Case No.  20-cv-03184-HSG<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 46 |

Pending before the Court is Defendant S.C. Johnson & Son, Inc.'s motion to dismiss.  Dkt. No. 46 ("Mot.").  The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted.  *See* Civil L.R. 7-1(b).  For the reasons detailed below, the Court **DENIES** the motion.

## I.     BACKGROUND

Plaintiffs Michelle Moran and Monica Waddell filed these consolidated actions against Defendant S.C. Johnson & Son, Inc., alleging that it uses false and misleading labels that certain of its Windex products have a "non-toxic formula."  *See* Dkt. No. 42 ("FAC").  Plaintiffs allege that Defendant manufactures and sells four separate cleaners with "non-toxic formula" labels: Windex Vinegar Non-Toxic Formula; Windex Original Non-Toxic Formula; Windex Ammonia-Free Non-Toxic Formula; and Windex Multi-Surface Non-Toxic Formula (the "Products").  *Id.* at ¶¶ 3, 26.  Plaintiffs contend that despite being labeled as "non-toxic," the Products contain ingredients that are toxic to humans, animals, and/or the environment.  *See id.* at ¶ 31.  Plaintiffs explain that these ingredients can cause "severe ocular irritation," "skin and eye irritation," "damage to certain plants and seedlings," "conjunctivitis and corneal damage," "headaches,"

1   "breathing difficulties," "erythema, desquamation, and drying of the skin," and "fissuring." *Id.*

2   Plaintiffs allege that Defendant "greenwashes" its products by erroneously claiming they are safe,

3   and that consumers pay an "unwarranted premium" for such products. *Id.* at ¶¶ 14, 25, 44, 95.

4   Based on these facts, Plaintiffs assert causes of action under California's Unfair

5   Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; False Advertising Law

6   ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and Consumer Legal Remedies Act

7   ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; as well as claims for breach of warranty and unjust

8   enrichment. *See id.* at ¶¶ 63–146.  Plaintiffs also seek to represent a nationwide class and a class

9   of California consumers, defined as:

10

11   > All residents of the United States who, within the applicable statute
   > of limitations periods, purchased the Products ("Nationwide Class");
12   > and

13   > All residents of California who, within four years prior to the filing of
   > this Complaint, purchase the products ("California Subclass").

14   *Id.* at ¶ 51.

15   ## II.   LEGAL STANDARD

16   Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a complaint if it

17   fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

18   dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

19   face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard

20   requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant

21   has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court accepts as true a

22   plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most

23   favorable to the plaintiff.  *Id.*  However, a plaintiff must provide "more than labels and

24   conclusions." *Twombly*, 550 U.S. at 555.  The Court does not credit allegations that are

25   conclusory, unwarranted deductions of fact, or unreasonable inferences. *Kwan v. SanMedica Int'l*,

26   854 F.3d 1088, 1096 (9th Cir. 2017).

27   //

28   //

*United States District Court*
*Northern District of California*

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### III.   DISCUSSION

#### A.   Article III Standing

As a threshold matter, Defendant contends that Plaintiffs lack Article III standing to sue regarding products that they did not purchase, and also lack standing to seek injunctive relief.  *See* Mot. at 15–18.  To have standing under Article III of the Constitution, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

##### i.   Unpurchased Products

It is undisputed that Plaintiff Moran purchased the Windex Original Non-Toxic Formula and Plaintiff Waddell purchased the Windex Vinegar Non-Toxic Formula.  *See* FAC at ¶¶ 9–10. Defendant asserts, however, that Plaintiffs lack standing to challenge the products that they did not purchase themselves—namely, Windex Ammonia-Free Non-Toxic Formula and Windex Multi-Surface Non-Toxic Formula—because Plaintiffs suffered no economic injury as to those products. Mot. at 15.  In opposition, Plaintiffs urge that they still have standing because the unpurchased products are substantially similar to the products that they did purchase.  *See* Dkt. No. 49 ("Opp.") at 11–13.

In the Ninth Circuit, "[t]here is no controlling authority on whether [p]laintiffs have standing for products they did not purchase."  *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012).  Although some district courts reserve the issue until a motion for class certification, "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar."  *Id.* at 869; *see also Papasan v. Dometic Corp.*, 2017 WL 4865602, at *8 (N.D. Cal 2017); *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 WL 5487236, at *12–13 (N.D. Cal. Oct. 2, 2013).  If the products are sufficiently similar, "any concerns regarding material differences in the products can be addressed at the class certification stage."  *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012).  However, "[w]here the alleged

1  misrepresentations or accused products are dissimilar, courts tend to dismiss claims to the extent

2  they are based on products not purchased." *Miller*, 912 F. Supp. 2d at 870.

3         Courts have found substantial similarity for purposes of standing where (1) the products

4  are physically similar; (2) the differences between the products are immaterial because the legal

5  claim and injury to the customer is the same; and (3) both the products and the legal claims and

6  injury are similar. *See Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-WHO, 2014 WL

7  1024182, at *4–8 (N.D. Cal. Mar. 13, 2014). The Court agrees with Judge Orrick of this district

8  that "the best approach is one which focuses on whether the type of claim and consumer injury is

9  substantially similar as between the purchased and unpurchased products." *Id.* at *8. "That

10 determination necessarily focuses on whether the resolution of the asserted claims will be identical

11 between the purchased and unpurchased products." *Id.*

12        Defendant contends that Plaintiffs have not established substantial similarity because the

13 Products have "distinct formula[s], contain[] different ingredients, and clean[] in unique

14 ways . . . ." Mot. at 15–16. Defendant notes that only one ingredient—2-Hexoxyethanol—is

15 common across all four, and Plaintiffs do not allege that the Products contain identical

16 concentrations of the ingredients. *Id.* at 16 (citing FAC at ¶ 32); *see also* Dkt. No. 50 ("Reply") at

17 8. Defendant further suggests that "[t]he composition of each Product is critical to Plaintiffs'

18 claims because the crux of their argument is that each Product's formula renders its non-toxic

19 label false and misleading." *See* Reply at 8.

20        Here, Plaintiffs allege that the four Products at issue contain the same "non-toxic formula"

21 label on the front of the bottles, despite the fact that they each "pose a risk of harm to humans,

22 animals, and/or the environment." *See* FAC at ¶¶ 26–29. The labels themselves are nearly

23 identical across all four Products in message and location on the bottles. *Id.* at ¶ 27.

24        Additionally, Plaintiffs include a list of each of the Products' ingredients and a description

25 of the potential harm each ingredient poses. *Id.* at ¶¶ 31–33. Although Defendant is correct that

26 the specific ingredients and concentrations appear to differ slightly across the four Products,

27 Plaintiffs allege that each Product contains ingredients that cause similar harm, including eye and

28 skin irritation. *Id.* Plaintiffs assert that in light of this harm, none of the Products have a "non-

United States District Court
Northern District of California

4

1  toxic formula." *See id.* at ¶ 33. To the extent that the unpurchased Products contain some

2  ingredients that do not appear in the Purchased products, based on the allegations these ingredients

3  appear to cause similar harm. For example, Windex Ammonia-Free Non-Toxic Formula contains

4  4-Tert-Butylcyclohexyl Acetate, Butylphenyl Methylpropional, C11-15 Sec-Pareth-12,

5  Hexamethylindanopyran, and Tetramethyl Acetyloctahydronaphthalenes, which Plaintiffs identify

6  as "fragrances." *See id.* at ¶¶ 31(e) 32(c). But the purchased Products also contain certain

7  fragrances, and Plaintiffs allege that all these fragrances are "skin allergens." *See id.* at ¶¶ 31(f)–

8  (g), 32(a)–(b).

9      As alleged, the differences between the Products appear immaterial to Plaintiffs' case

10  because all four Products contain ingredients alleged to cause similar harm, and Plaintiffs assert

11  that it is thus misleading to label and advertise all these Products as non-toxic. *Accord Maisel v.*

12  *S.C. Johnson & Son, Inc.*, 2021 WL 1788397, at *4–6 (N.D. Cal. May 5, 2021) (finding plaintiff

13  could challenge unpurchased cleaning products because they shared the same manufacturer, brand,

14  marketing demographics, purpose, false advertising claims, similar packaging, key ingredients,

15  and misleading effect); *Bush v. Rust Oleum Corp.*, 2021 WL 24842, at *1, 6 (N.D. Cal. Jan. 4,

16  2021) (finding plaintiff could challenge 13 unpurchased products because the "non-toxic" and

17  "earth friendly" labels were substantially similar across all products). Accordingly, the Court

18  finds that Plaintiffs have sufficiently alleged that the unpurchased Products are substantially

19  similar to the purchased Products, and denies the motion on this basis.

20              ii.    **Injunctive Relief**

21      Defendant next argues that Plaintiffs lack standing to seek injunctive relief because they

22  fail to allege a likelihood of future harm. Mot. at 16. More specifically, Defendant urges that

23  Plaintiffs have not adequately alleged that they "definitively plan to purchase the Products in the

24  future." *See id.*

25      To have standing to seek injunctive relief under Article III, a plaintiff must "demonstrate a

26  real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*,

27  631 F.3d 939, 946 (9th Cir. 2011) (quotation omitted). Therefore, "[o]nce a plaintiff has been

28  wronged, [she] is entitled to injunctive relief only if [she] can show that [she] faces a 'real or

United States District Court
Northern District of California

5

immediate threat . . . that [she] will again be wronged in a similar way.'" *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  In the context of false advertising cases, the Ninth Circuit has confirmed "that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018).  A plaintiff may establish the risk of future harm in two ways:  (1) "the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to"; or (2) "the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 969–70.

The plaintiff in *Davidson*, for example, sought injunctive relief after learning that the flushable wipes that she purchased were not in fact "suitable for disposal down a toilet." *Id.* at 961–62 (emphasis omitted).  The plaintiff alleged that she would purchase flushable wipes from the defendant again if they were in fact flushable, but she "ha[d] no way of determining whether the representation 'flushable' [on the product label] is in fact true." *Id.* at 970–71.  The Court found such allegations sufficient to establish the risk of future harm because if the plaintiff encountered the term "flushable" on the defendant's products in the future, she "could not rely on that representation with any confidence." *Id.* at 971.

Here too, Plaintiffs allege that they "[desire] to purchase the products again" if they were "in fact 'non-toxic'—i.e., if they truthfully did not pose a risk of harm to humans, animals, and/or the environment."  FAC at ¶¶ 9–11.  However, Plaintiffs allege that they are "unable to rely on the 'truth' of the Products' 'non-toxic' advertising claims." *Id.*  To the extent Defendant argues that such allegations are too "tentative" to establish standing, *see* Mot. at 17, the Court is not persuaded.  These allegations track those found in *Davidson*, almost exactly.  *Compare Davidson*, 889 F.3d at 971, *with* FAC at ¶¶ 9–11.

Defendant nevertheless urges that this case is more akin to *Cordes v. Boulder Brands USA*,

6

1    *Inc.*, No. CV 18-6534 PSG (JXC), 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018), because

2    Plaintiffs in this case cannot be misled by the Products' non-toxic labels in the future because the

3    ingredients are listed on the company's website.  Reply at 10–11.  In *Cordes*, the plaintiff

4    challenged the slack-fill (*i.e.*, empty space in the packaging) in a pretzel bag, claiming that it

5    deceived consumers into believing that the bag contained more pretzels than it did.  *Id.* at *1.  The

6    plaintiff did not allege that "he [had] any interest in purchasing the Product in the future," *Id.* at

7    *4, and the court held that this was sufficient, on its own, to find that the plaintiff lacked standing

8    to seek injunctive relief.  *Id.*  But even if the plaintiff had included such allegations, the court

9    reasoned that the deception was still distinct from that in *Davidson*.  *Id.*  The court explained that

10   in *Davidson*, the plaintiff alleged that she could not rely on products' label to know if the wipes

11   were flushable.  *Id.*  But in *Cordes*, the plaintiff did not allege that the pretzel bag's label was

12   unreliable.  The court therefore reasoned that the plaintiff "could easily determine the number of

13   pretzels in each package before making a future purchase by simply reading the back panel, which

14   lists the number of servings in each bag and the number of pretzels in each serving." *Id.*

15        As in *Davidson*, however, Plaintiffs in this case allege that the Products' labels are

16   misleading, and that they accordingly cannot rely on Defendant's representations about the

17   Products' toxicity in the future.  The fact that the Products' ingredients are listed on the company's

18   website, and not on the Products' label, further underscores Plaintiffs' inability to rely on the

19   labels themselves.  A consumer should not have to launch a detailed investigation on a company's

20   website to determine whether Defendants' prominent "non-toxic" label is accurate.  Defendant

21   does not cite, and the Court is unaware of, any cases in which courts have imposed this sort of

22   requirement for a plaintiff to establish standing.  *Cf. Williams v. Gerber Products Co.*, 553 F.3d

23   934, 939 (9th Cir. 2008) (finding that the FDA's ingredient list requirement is not intended to

24   enable "manufacturers [to] mislead consumers and then rely on the ingredient list to correct those

25   misrepresentations and provide a shield for liability for the deception"); *In re Band Energy Drink*

26   *Mktg. Litig.*, 2020 WL 4458916, at *11 (N.D. Cal. Feb. 6, 2020) (holding that plaintiffs properly

27   alleged standing for injunctive relief by stating that they regularly shopped where defendant's

28   products were sold and would purchase the products again, but had no way of knowing that

1   defendant's ingredient representations were true when they saw the products on the store shelves).

2       The Court finds that Plaintiffs have standing to seek injunctive relief.

3       **B.     UCL, FAL, and CLRA Claims**

4       Defendant challenges Plaintiffs' UCL, FAL, and CLRA claims in two ways.  *First*,

5   Defendant argues that Plaintiffs have failed to plead fraud with the required particularity because

6   Plaintiffs do not identify what advertisements they relied on, explain how the Products are toxic,

7   or state when or where they purchased the Products.  Mot. at 13.  *Second*, Defendant argues that

8   Plaintiffs rely on a strained meaning of the term "non-toxic," and that the Products' labels would

9   not deceive a reasonable consumer.  Mot. at 10.

10      **i.     Rule 9(b)**

11      Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard for claims

12   that "sound in fraud."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation

13   omitted); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity

14   the circumstances constituting fraud or mistake.").  The Ninth Circuit "has interpreted Rule 9(b) to

15   require that allegations of fraud are specific enough to give defendants notice of the particular

16   misconduct which is alleged to constitute the fraud charged so that they can defend against the

17   charge and not just deny that they have done anything wrong."  *Neubronner v. Milken*, 6 F.3d 666,

18   671 (9th Cir. 1993) (quotation omitted).  A plaintiff must therefore identify "the who, what, when,

19   where, and how" of the alleged conduct.  *Cooper v. Pickett*, 137 F.2d 616, 627 (9th Cir. 1997).

20   "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally."

21   Fed R. Civ. P. 9(b).  The parties appear to agree that Plaintiffs' allegations sound in fraud and thus

22   must meet the heightened pleading standard.  *See* Mot. at 13; Opp. at 2.

23      Defendant first argues that Plaintiffs fail to identify the specific advertisements that they

24   relied on when purchasing the Products.  Mot. at 13.  Defendant recognizes that Plaintiffs include

25   images of the Products in the complaint, FAC at ¶ 27, but asserts that this is somehow deficient

26   because Plaintiffs do not explicitly allege "that the pictures included in the Complaint are of the

27   Product(s) they purchased" or that they relied on these labels.  *See* Mot. at 13.

28      To the extent Defendant challenges Plaintiffs' allegations regarding the Products' *labels*,

United States District Court
Northern District of California

United States District Court
Northern District of California

the Court rejects that argument.  Plaintiffs allege which Products they purchased, FAC at ¶¶ 9–10; that each Product falsely or misleadingly claims on its label to have a "non-toxic formula," *id.* at ¶¶ 1, 5, 27–30, 65; that based on these representations, Plaintiffs believed the Products "[did] not pose any risk of harm to humans, animals, and/or the environment," *id.* at ¶ 30; and that Plaintiffs relied on these "non-toxic formula" representations in deciding to purchase the Products, *id.* at ¶¶ 9–10, 45–48, 74–75, 84, 95, 106, 112, 129, 143, 146.  The Court finds these allegations are sufficient to establish which advertisements Plaintiffs relied on.[1]  *See Maisel*, 2021 WL 1788397 at *24–25 (finding plaintiff met the Rule 9(b) standard by describing the plant-based representations on each product and stating her reliance on those representations).

Defendant next contends that Plaintiffs do not adequately explain how the Products' *formulas* are toxic, and instead just discuss specific ingredients.  Mot. at 13.  Defendant points to the "Green Guides," which were created by the United States Federal Trade Commission ("FTC") "to help marketers avoid deceptive environmental claims under Section 5 of the FTC Act, 15 U.S.C. § 45."  Dkt. No. 46-3, Ex. B ("The Green Guides") at 1.  As the Guide itself, explains:

> The Green Guides outline general principles that apply to all environmental marketing claims and provide guidance regarding many specific environmental benefit claims.  The Guides explain how reasonable consumers likely interpret each such claim, describe the basic elements necessary to substantiate it, and present options for qualifying it to avoid deception.

*Id.*[2]  Defendant contends that the Green Guides recognize that "a statement that a product is non-toxic cannot be false or misleading simply because the Products contain some ingredients that may be harmful."  *See id.*  The section of the Green Guides that Defendant relies on, however, just

---

[1] The Court does not read Plaintiffs' complaint (or their opposition brief), to assert claims for misleading advertisements beyond the Products' labels themselves.  Although there are references in the complaint to "advertising and labeling" and "advertising and packaging," in context, the Court reads these references to refer to the Products' labels.  Nevertheless, to the extent Plaintiffs are attempting to bring claims based on other advertisements for the Products, the Court agrees with Defendant that Plaintiffs have not identified those advertisements with sufficient particularity.  The only "advertisements" that Plaintiffs point to are the labels themselves.

[2] Plaintiffs also rely on the Green Guides, and explain in their complaint that they are provided by the FTC to help companies avoid making misleading and deceptive claims.  *See* FAC ¶ 15.

United States District Court
Northern District of California

1    states that "a non-toxic product could contain a toxic substance at a level that is not harmful to

2    humans or the environment." *See* The Green Guides at 148 (emphasis in original).  But in any

3    event, it is not the Court's role to determine on a motion to dismiss whether the Products are in

4    fact toxic.  It is enough at this stage that Plaintiffs have alleged that the Products "contain certain

5    ingredients, which, at their given concentrations in the Products, can cause harm to humans,

6    animals, and/or the environment," and that Plaintiffs detail the specific ingredients.  *See* FAC at

7    ¶ 31; *see also Bush*, 2021 WL 24842, at *5 (on motion to dismiss, rejecting defendant's claim that

8    the plaintiff only challenged individual ingredients of the cleaning products as being toxic, but not

9    the product itself).

10        Lastly, Defendant contends that Plaintiffs do not sufficiently allege where and when they

11   purchased the Products.  Mot. at 14.  Plaintiffs allege that Plaintiff Moran purchased Windex

12   Original "at a grocery store in Pleasanton, California for approximately $4 in approximately

13   2019," and Plaintiff Waddell purchased Windex Vinegar "at a retail store in Santa Rosa,

14   California, for approximately $4 in approximately 2019."  FAC at ¶¶ 9–10.  Defendant suggests

15   that Plaintiffs must identify the specific store and the specific date on which they made their

16   purchases.  In support of this requirement, Defendant relies on two cases, *Tabler v. Panera LLC*,

17   No. 19-cv-01646-LHK, 2019 WL 5579529, at *11 (N.D. Cal. Oct. 29, 2019) and *Grivas v.*

18   *Metagenics, Inc.*, No. SACV 15-01838-CJC(DFMx), 2018 WL 6185977, at *6 (C.D. Cal. Jun 4,

19   2018).  Mot. at 14.  These cases are inapposite.  In *Tabler*, the plaintiff alleged an "unspecified"

20   timeframe for purchases made.  *Tabler*, 2019 WL 5579529, at *11.  And the plaintiff in *Grivas*

21   failed to allege any information about which of the defendant's 17 products he purchased or when

22   he purchased them, or what misrepresentations he allegedly relied on in purchasing them.  *Grivas*,

23   2018 WL 6185977, at *6.  The Court finds that for present purposes Plaintiffs' allegations are

24   sufficient to establish when and where they made their purchases.  *See Robinson v. J.M. Smucker*

25   *Co.*, 18-cv-04654-HSG, 2019 WL 2029069, at *3 (N.D. Cal. May 8, 2019) (finding sufficient

26   allegations that plaintiff "purchased Crisco EVOO from a Wal-Mart in Antioch multiple times in

27   2017 and 2018 in reliance on the packaging's purportedly false claim").

28        In sum, the Court finds that Plaintiffs have pled their UCL, FAL, and CLRA claims with

1   the requisite particularity.

2         **ii.**     **Reasonable Consumer Test**

3         Defendant next argues that Plaintiffs have not plausibly alleged that the Products' labels

4   are misleading because Plaintiffs' claims are premised on an "idiosyncratic" meaning of the term

5   "non-toxic." *See* Mot. at 10–12.

6         The parties agree that the UCL, CLRA, and FAL claims are all governed by the

7   "reasonable consumer" test. *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

8   "Under the reasonable consumer test, [Plaintiffs] must show that members of the public are likely

9   to be deceived." *Id.* (quotations omitted). "'Likely to deceive' implies more than a mere

10  possibility that the advertisement might conceivably be misunderstood by some few consumers

11  viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496,

12  508 (Cal. Ct. App. 2003). Rather, the test is whether "it is probable that a significant portion of

13  the general consuming public or of targeted consumers, acting reasonably in the circumstances,

14  could be misled." *Id.* "California courts . . . have recognized that whether a business practice is

15  deceptive will usually be a question of fact." *Williams*, 552 F.3d at 938. It is thus a "rare

16  situation" when "granting a motion to dismiss [a UCL, CLRA, or FAL claim] is appropriate." *Id.*

17  at 939.

18        Here, the critical question is whether a reasonable consumer would be misled by the term

19  "non-toxic" into thinking that the Products "[do] not pose any risks to humans or the environment,

20  including household pets." FAC ¶ 18. The parties rely on dueling definitions of the term "non-

21  toxic."

22        Defendant, for its part, relies on a definition of "toxic" from the Merriam-Webster

23  Dictionary, and contends that it "means that a substance is 'poisonous' or 'capable of causing

24  death or serious debilitation.'" Mot. at 9. Defendant argues that "'[n]on-toxic' means the

25  opposite: that a substance is not poisonous and will not cause death or serious debilitation." *Id.*

26  As in Section III.B.i above, Defendant also cites to portions of The Green Guides to suggest that

27  Plaintiffs' broader definition of non-toxic is unreasonable because it is contrary to FTC guidance.

28  In the context of "non-toxic claims," the Green Guides explain that:

United States District Court
Northern District of California

1

2

3

4

5

> [T]here is no allowance for "de minimis" or "trace" toxicity. However, a non-toxic product could contain a toxic substance at a level that is not harmful to humans or the environment. For example, apple seeds contain cyanide. Although a marketer could not claim that cyanide itself is non-toxic, the amount in an apple is so low that it is not harmful to humans or the environment, and so the marketer could claim the apple is non-toxic.

6   *See* The Green Guides at 148–49 (emphasis in original).[3]  Defendant interprets this to mean that

7   labeling a product as "non-toxic" cannot be false or misleading simply because some of the

8   ingredients it contains may be harmful. Mot. at 13. Defendant thus argues that Plaintiffs'

9   interpretation of the term non-toxic "is unreasonable, implausible, and contrary to FTC guidance

10  on the topic." *See* Mot. at 11.

11          Plaintiffs, in contrast, urge that Defendant's definitions are too narrow. They point out that

12  even the Merriam-Webster Dictionary offers an alternative definition of toxic, defined as

13  "harmful." Opp. at 5.  Accordingly, a reasonable consumer could believe that "non-toxic" means

14  "not posing a risk of harm." *See* Dkt. No. 49 at 5, & n.2. But at least as alleged, the Products can

15  lead to "severe ocular irritation," "skin and eye irritation," "damage to certain plants and

16  seedlings," "conjunctivitis and corneal damage," "headaches," "breathing difficulties," "erythema,

17  desquamation, and drying of the skin," and "fissuring." FAC ¶ 31.

18          Plaintiffs also rely on portions of the Green Guides regarding "non-toxic claims," codified

19  at 16 C.F.R. § 260.10. Section 260.10 states:

20

21

22

23

> A non-toxic claim likely conveys that a product, package, or service is non-toxic both for humans and for the environment generally. Therefore, marketers making non-toxic claims should have competent and reliable scientific evidence that the product, package, or service is non-toxic for humans and for the environment or should clearly and prominently qualify their claims to avoid deception.

24

25

26

27

28

---

[3] Plaintiffs do not appear to oppose Defendant's request for judicial notice of Merriam Webster's definition of "toxic" and the FTC's Statement of Basis and Purpose for the 2012 Green Guides. *See* Dk. No. 46-1 at 2.  In fact, Plaintiffs also refer to these exhibits. Opp. at 3-5. The Court therefore **GRANTS IN PART** Defendant's request for judicial notice as to these documents.  And because, as explained above, the ingredient lists from Defendant's website are irrelevant to whether Plaintiffs have standing to seek injunctive relief, Defendant's request for judicial notice is otherwise **DENIED AS MOOT**.

United States District Court
Northern District of California

1    16 C.F.R. § 260.10(b).  It also provides an example:

3           A marketer advertises a cleaning product as "essentially non-toxic"
            and "practically non-toxic."  The advertisement likely conveys that
            *the product does not pose any risk to humans or the environment*,
4           including household pets.  If the cleaning product poses no risk to
            humans but is toxic to the environment, the claims would be
5           deceptive.

6    *Id.* (emphasis added).  Plaintiffs thus contend that a reasonable consumer would likely interpret

7    "non-toxic" to mean "that the product does not pose any risk to humans or the environment,

8    including household pets."  *See* FAC ¶ 18 (citing 16 C.F.R. § 260.10).

9           Plaintiffs also cite to findings by numerous organizations to support their definition of

10   "non-toxic" as reasonable.  *See* FAC ¶¶ 15–16, 21, 24.  One significant finding proffered by

11   Plaintiffs is an evaluation by the National Advertising Division ("NAD"), an investigative unit of

12   the Better Business Bureau.  *See* FAC ¶ 20.  The NAD evaluated one of the Products at issue in

13   this case—Defendant's Windex Vinegar Non-Toxic Formula Product—and recommended that

14   Defendant "discontinue the claim 'non-toxic' on the package."  *Id.*  The NAD explained:

16          After considering the guidance offered by the Federal Trade
            Commission's Guides for the Use of Environmental Marketing
17          Claims ("Green Guides") and FTC precedent, NAD determined that
            the term "non-toxic," as used on the label of Windex Vinegar Glass
18          Cleaner, reasonably conveys a message that the product **will not
            harm people (including small children), common pets, or the
19          environment.  Importantly, NAD noted that a reasonable
            consumer's understanding of the concept of "will not harm" is
20          not limited to death, but also various types of temporary physical
            illness, such as vomiting, rash, and gastrointestinal upset.**

23   FAC ¶ 21 (emphasis in original).[4]  Defendant appealed the NAD's decision to the National

24   Advertising Review Board ("NARB"), which agreed with the NAD's decision and also

---

[4] *See also* "NAD Recommends S.C. Johnson Discontinue 'Non-Toxic' Claim on Windex Vinegar
Glass Cleaner; Advertiser to Appeal to NARB," BBB NATIONAL PROGRAMS NEWSROOM,
https://bbbprograms.org/media-center/newsroom/nad-sc-johnson-windex-vinegar-glass-cleaner-claim (last visited July 27, 2021).

13

United States District Court
Northern District of California

recommended that Defendant discontinue its non-toxic claim.  *See* FAC at ¶¶ 23–24.[5]  The NARB "express[ed] concern that an unqualified non-toxic claim will lead reasonable consumers to conclude not only that a misused cleaning product does not pose a risk of death or serious consequences, but also that product misuse poses no health risks, even those that are not severe or are more transient in nature."  *Id.* at ¶ 24.

Similarly, Plaintiffs allege that the Environmental Working Group ("EWG") considered two of the Products at issue in this case—Windex Ammonia-Free Non-Toxic Formula and Windex Original Non-Toxic Formula.  *See id.* at ¶¶ 34–42.  The EWG determined that the Ammonia-Free Formula was "[c]orrosive" and "[m]ay contain ingredients with potential for respiratory effects; chronic aquatic toxicity; [and] developmental/endocrine/reproductive effects." *Id.* at ¶ 40.  The EWG also determined that the Original Non-Toxic Formula "[m]ay contain ingredients with potential for acute aquatic toxicity; respiratory effects; skin irritation/allergies/damage."  *Id.* at ¶ 42.  Contrary to Defendant's urging, therefore, this is not simply Plaintiffs' "personal understanding of non-toxic," but one that has been advanced by other entities as well.  *See* Reply at 4.

Defendant responds by pointing to the district court order granting in part a motion to dismiss in *Rugg v. Johnson & Johnson*, No. 17-cv-05010-BLF, 2018 WL 3023493 (N.D. Cal. Jun 18, 2018).  In *Rugg*, the court dismissed the plaintiffs' claims that the "hypoallergenic" labels on defendant's baby products were misleading.  *Id.* at *3.  The plaintiffs had alleged that consumers would "believe and expect that a product that is labeled as hypoallergenic contains no ingredients known to produce a negative reaction—skin irritation, skin corrosion, eye damage, birth defects, cancer, genetic mutations, etc."  *Id.* at *2.  Relying on dictionary definitions, the court found it "completely implausible" that the term "hypoallergenic" could be taken to mean "that the product does not contain *any* ingredients, in any concentration, which could 'sensitize' the skin, cause cancer, or have *any* other negative effect."  *Id.* at *3 (emphasis in original).  However, in *Rugg*, the

---

[5] *See also* "NARB Recommends S.C. Johnson Discontinue Unqualified 'Non-Toxic' Claim on Windex Vinegar Glass Cleaner," BBB NATIONAL PROGRAMS NEWSROOM, https://bbbprograms.org/media-center/newsroom/narb-recommends-s.c.-johnson-discontinue-unqualified-non-toxic-claim-on-windex-vinegar-glass-cleaner (last visited July 27, 2021).

United States District Court
Northern District of California

United States District Court
Northern District of California

plaintiffs failed to cite any evidence to support their proffered definition of "hypoallergenic."  As noted above, Plaintiffs have alleged several third-party opinions that support their proffered definition.

At this stage, the Court need not decide which party offers the better, more reasonable or more persuasive definition.  It is enough that Plaintiffs' interpretation is plausible under the lenient *Williams* standard.  And the Court finds that there is sufficient support in the complaint to support an inference that a reasonable consumer would adopt Plaintiffs' definition.  Accordingly, the Court cannot say at this stage that no reasonable consumer could be misled by the Products' labels.  The Court denies Defendant's motion on this basis.

### C.    Breach of Warranty Claim

Defendant next challenges Plaintiffs' breach of warranty claim on the ground that they do not explain how the Products' formulas are not "non-toxic," or why a reasonable consumer would believe that the term "non-toxic" means that the Products "do not pose any risk of harm to humans, animals, and/or the environment."  *See* Mot. at 18; Reply at 12.  The Court has already rejected these arguments as detailed above.  Plaintiffs have sufficiently pled that the Products are not "non-toxic" as labeled, and that Defendant thus breached its express warranty on the front of the Products.  The Court understands that Defendant disagrees with these allegations, but it is not the Court's current role to resolve the dispute as to whether they are true.  The Court denies Defendant's motion on this basis.

### D.    Unjust Enrichment Claim

Lastly, Defendant challenges Plaintiffs' unjust enrichment claim.  Defendant argues that this claim is derivative, and asserts that because Plaintiffs' other claims fail, their unjust enrichment claim fails as well.  *See* Mot. at 18–19.

As the parties both appear to recognize, there is generally "no cause of action in California for unjust enrichment." *Melchior v. New Line Productions, Inc.*, 131 Cal. Rptr. 2d 347, 357 (Cal. Ct. App. 2003); *see also Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (same).  Unjust enrichment is not a "theory of recovery, but an effect:  the result of a failure to make restitution under circumstances where it is equitable to do so." *Melchior*, 131 Cal. Rptr. 2d

at 357 (quotation omitted).  "It is synonymous with restitution," *id.*, and "is typically sought in connection with a 'quasi-contractual' claim in order to avoid unjustly conferring a benefit upon a defendant where there is no valid contract," *Lorenzo v. Qualcomm Inc.*, 603 F. Supp. 2d 1291, 1307 (S.D. Cal. 2009).  Rather than dismiss an unjust enrichment claim, "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana*, 783 F.3d at 762 (quotation omitted).

In their opposition brief, Plaintiffs request that the Court construe their unjust enrichment claim as a request for restitution.  Opp. at 19.  Defendant responds that the Court should not do so because Defendant's actions were not fraudulent or misleading.  Reply at 13.  But as noted above, the Court has found that Plaintiffs have adequately alleged that labeling the Products as non-toxic was fraudulent and misleading.  Therefore, at this stage, the Court will construe the cause of action as a quasi-contract claim seeking restitution, as it has done in prior cases.  *See, e.g.*, *Smith v. Keurig Green Mountain, Inc.*, 393 F.Supp.3d 837, 848-9 (N.D. Cal. 2019); *see also Monk v. North Coast Brewing Co., Inc.*, No. 17-cv-05015-HSG, 2018 WL 646679, at *5 (N.D. Cal. Jan 31, 2018).

## IV.   CONCLUSION

Accordingly, the Court **DENIES** the motion to dismiss.  The Court further **SETS** a case management conference on August 17, 2021, at 2:00 p.m., in Courtroom 2 on the Fourth Floor, at 1301 Clay Street, Oakland, California.  The joint case management statement is due August 10, 2021.  The parties should be prepared to discuss how to move this case forward expeditiously.

**IT IS SO ORDERED.**

Dated:  7/28/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge

16